## In re AIR VERMONT, INC., North Atlantic Airlines, Inc., Debtors.

### Bankruptcy Nos. 84–00019, 84–00017.

United States Bankruptcy Court,
D. Vermont.

Feb. 25, 1984.

Joseph C. Palmisano, Barre, Vt., for debtor.

Mark R. Butterfield, Rutland, Vt., for Pioneer Commercial Funding Corp.

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

Peter W. Hall and Holly K. Harris, Asst. U.S. Attys., Rutland, Vt., for I.R.S.

Alan D. Port, Burlington, Vt., for The Howard Bank.

D. Russell Morgan, Burlington, Vt., for Travelers Indem. Co.

Daniel Cohn, for Air Vermont Management Co. and for VCL Partnership.

Robert J. Hansman, President of Hansman, McAvoy & Co., Inc., pro se.

## MEMORANDUM AND ORDER ON MOTION OF DEBTOR TO USE CASH COLLATERAL

CHARLES J. MARRO, Bankruptcy Judge.

This matter is before the Court on the Motion of the Debtor, Air Vermont, Inc., filed February 2, 1984 to use Cash Collateral from the proceeds of accounts receivable in which both Pioneer Commercial Funding Corporation and the Internal Revenue Service claim an interest by virtue of alleged liens. The Internal Revenue Service filed a written Objection to the Debtor's Motion on February 7, 1984, and Pioneer expressed its opposition to the Motion insofar as the use of cash collateral would jeopardize the collateral in which it claimed a security interest consisting of all billings processed through the Airlines Clearing House.

## BACKGROUND

The Debtor, Air Vermont, Inc., commenced business in September, 1981, as a commuter airline operating from the International Airport at Burlington, Vermont, to various points mostly in the Northeast. It has suffered the growing pains of over-expansion at a rapid rate to the point that it started having financial difficulty which necessitated the filing of a Petition for Relief under Chapter 11 of the Bankruptcy Code on January 31, 1984.

On the same day it filed an Emergency Motion for Authority to Enter Into an Interim Secured Financing Agreement with certain lenders known as VCL Partners to incur debt with super priority over other administrative expenses and senior to existing liens including that of the Internal Revenue Service. This Motion recited that the VCL Partners were willing to lend the Debtor on an interim basis, pending negotiations for a longer-term financing agreement, immediately $100,000.00 and up to $200,000.00 maximum on the terms and conditions set forth in an attached Agreement between the Debtor and the VCL Partners as "Lender."

The Agreement specifically stated that the Debtor was authorized to advance not more than $200,000.00 and that whether any advances shall be made and the amount of any advances were to be in the sole discretion of the Lender.

Notice of the hearing on this Motion was given to members of the Creditors' Committee appointed by the Court and to the Internal Revenue Service. Pioneer received no notice.

At the hearing on this Motion, the Internal Revenue Service consented to the borrowing by the Debtor from the VCL Partners in an amount of $200,000.00 with a super priority granted to this Lender. After hearing, the Court signed a proposed Order furnished by the Attorney for the Debtor dated February 2, 1984 granting the Debtor's Motion and providing for a super priority to VCL Partners for funds loaned by this partnership to the Debtor. This Order recited in part the following:

"Such debt shall be funded initially in the amount of $200,000.00, ..."

It also recited that:

"The provisions of the motion and the Security Agreement and Borrowing Stipulations attached thereto as Exhibit 'A' hereby are approved."

Also on February 2, 1984, the Debtor filed an Ex Parte Motion for an Order Approving the employment of a management team pursuant to a contract to be signed immediately so as to permit necessary personnel to be engaged by the management team in order to get the airlines flying by Friday, February 3, 1984. The operation of the airlines had been suspended for a period prior to the filing of the Chapter 11 Proceeding and the Court did approve a Management Contract between the Debtor and Air Vermont Management Company so that the latter could manage and operate the business of the Debtor. The principals of the Air Vermont Management Company include members of the VCL Partners.

They have taken steps to reduce operating costs by decreasing the number of air flights, laying off a number of employees

to the point where the weekly payroll has decreased from approximately $90,000.00 per week to about $40,000.00. However, on the other side of the ledger, the revenue has declined and the cash flow is critical. The passenger count is extremely poor. An alleged contamination at the fuel farms has forced the Debtor to purchase gas at various airports at a much higher cost. The airline has suffered very bad publicity and there has been much loss of revenue due to cancellations.

## FACTS

The Schedules attached to the Petition for Relief, sworn to by John E. Porter, President, show total liabilities of $2,712.389.94 and assets of $2,112,725.30. The liabilities include an Internal Revenue Service lien amounting to $340,248.28 and taxes entitled to priority of payment of $41,753.16. In addition, the Debtor has listed as a secured creditor Pioneer Funding in the sum of $100,000.00 on the basis of a security interest held by this creditor in accounts receivable.

The Debtor's operation is conducted with aircraft owned by it but subject to liens and with leased planes. The owned aircraft are not listed as assets, but they are described under Schedule A–2 which lists creditors holding security. This Schedule indicates that the Debtor owns nine airplanes with a total valuation of $837,000.00 and liens of $756,148.05 for a net equity of $80,851.95. In addition, the Debtor owns a plane which is unencumbered and has a valuation of about $37,000.00. This would bring the total equity in the planes to $117,-851.95.

The Debtor has fuel farms with a value of $50,000.00. It also has some inventory, but its value has been established by testimony entitled to questionable weight.

It has no notes receivable, but it does hold some unsecured obligations from various parties, some of which are disputed.

VCL Partners has advanced the Debtor $122,644.72 under a super-priority lien approved by the Court. This sum has been used to cover operating expenses. This lending partnership is unwilling to make future advances to the Debtor.

The Internal Revenue Service and Pioneer Funding liens total at least $440,-248.28. With the super-priority lien of VCL Partners, the total secured indebtedness of the Debtor is at least $562,893.00.

## DISCUSSION

Under the Bankruptcy Code, the Debtor may not use cash collateral unless each entity that has an interest in such cash collateral consents or the court, after notice and hearing, authorizes such use. § 363(c)(2).

■ Both the Internal Revenue Service and Pioneer Funding with liens against the cash collateral which the Debtor seeks to use have objected so that the Debtor may not use the cash collateral unless authorized by the Court. Such authorization, under ordinary circumstances, should not be granted without "adequate protection" to the lienholders. The Debtor does not dispute the necessity of providing such "adequate protection." This term has not been defined by the Code. It appears to be a flexible one. 2 Collier 15th Ed. 363–25. § 363.06.

■ The Debtor has the burden of proof on the issue of adequate protection. § 363(e) provides that the trustee has such burden. Debtor in possession has the same rights and powers as a trustee. § 1107(a) of the Bankruptcy Code.

Although "adequate protection" is not defined by the Code, it may be provided by:

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant

results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. § 361(1), (2), (3) Bankruptcy Code.

 The Debtor seeks to provide such adequate protection by an additional or replacement lien under sub-paragraph (2) of this section. However, it is apparent that the Debtor does not have enough equity in any property upon which it may grant a replacement lien to the Internal Revenue Service and to Pioneer Funding.

By its own Schedules, which may be construed as an admission by the Debtor, it has no equity in its total assets. The Summary of Assets valued at $2,112,725.30 and liabilities of $2,712,389.94 shows a minus equity of $599,664.64.

The Debtor has attempted to establish sufficient equity through the testimony of Witnesses Chapple and Porter. After giving due consideration to the weight of their testimony, the Court is convinced that there is not sufficient equity to assure the lienholders adequate protection.

Further, Peter Val Preda, one of the lending partners improved as a witness by the Debtor, painted a very bleak and dismal picture of the present financial condition of the Debtor, so much so that the Court has very serious reservations whether the Debtor can consummate an effective reorganization without the infusion of substantial working capital.

The inability of the Debtor to provide adequate protection to the lienholders is buttressed by the fact that the lending partners are unwilling to advance any additional funds to the Debtor over and above the $122,644.72 even though their superpriority lien of up to $200,000.00 has been approved by the Court.

Although the Debtor has conceded that Pioneer Funding is a secured creditor in the Schedules, it is now taking the position in a collateral proceeding that the security interest of Pioneer is not perfected. This matter is now before the Court for determination and until there has been a decision that the lien of Pioneer is invalid, for the purpose of this proceeding the security interest of Pioneer must be considered perfected as it relates to the issue of adequate protection.

### ORDER

Now, therefore, upon the foregoing, the Motion of the Debtor to use cash collateral is hereby DENIED.